Good morning, my name is William Christie and I represent the appellant in this case and I'm here to talk about the first amendment to the statute. I'm going to start by saying that the amendments to this statute violate the first amendment for two reasons. One, they resulted in a law that is substantially over broad and two, result in a law that is a content based restriction on speech that does not survive strict scrutiny. The amendments passed by Congress in 2013 make this statute different than the law that was reviewed by a prior panel in United States v. Sanger which upheld the 2006 version of this statute. The key differences between the 2006 law and the current law for the purposes of this appeal are as follows. One is the 2013 amendment substantially changed the intent prong of the statute. Under the prior law, one of the ways for the government to prove its case was to prove that the defendant acted with an intent to cause substantial emotional distress. That was stricken from the current law and added to the current law was an intent to intimidate along with the other statutory phrases. Perhaps more important though to the over breadth challenge is that Congress substantially altered the harm prong of the statute. And whereas under the prior law, the government needed to prove that there was both criminal intent and actual harm felt by the target of the speech. Under the current statute, it is in part based upon a solely reasonable person standard and a person can be convicted under this statute even if no person was actually harmed and even under circumstances where the actual target of the speech does not know that it was published in the first place. I'm under the impression that this statute regulates conduct rather than speech. Well, I think when this statute was reviewed in Sayre, which had the same course of conduct language that the current statute does, the Sayre court reviewed it as a restriction on speech in that case, not as a restriction on conduct. I think the starting point should be the statute. The statute says engage in a course of conduct. Correct. If you look at the course of conduct that the statute regulates, however, it talks about communications and the means of communications, whether they're electronic communications, whether they're mail, whether they're telephone calls, what other sort of electronic communications that people communicate with these days that the statute is intended to reach are all communications that reach speech. I'm not very good at electronics, but my impression is when you do these electronic, you are doing conduct to emanate these messages. Well, if you're sending a text, I think the better analysis, and forgive me for using that phrase, is that you're speaking, you're uttering speech. Whether you're sending a text or a letter or an email, you're communicating. So if you're extorting someone, you're engaging in conduct, right? If you're extorting someone, you're engaging, I would say you're engaging in speech, but it's speech that's integral to criminal conduct, so therefore it's not protected extortion. Extortion is conduct. The means of the extortion are speech. Otherwise, you couldn't say it's integral to criminal conduct. There's got to be some conduct that's being regulated. What's being regulated is the extortion, right? Right, but in that instance, the way the crime is being committed is through speech. If we had a statute that prohibited extortion, would you say that's a regulation of speech? Yes, I'd say it's a regulation of speech that is not protected by the First Amendment. But that matters a fair amount because, at least I am, if I was in the district court, it's suggested that the overbreath analysis for a facial challenge, the burden of proving substantial overbreath shifts depending on whether the statute's regulating conduct or speech. Is that right? If the burden on an overbreath challenge rests with the defendant to establish that the law is substantially If it's regulating speech, I thought if it was regulating conduct, the burden of showing substantial overbreath rests on the plaintiff. I think the difference is Let's take Virginia v. Hicks. It's just an actual regulation of pure conduct. And then the claim is there will be some speech applications. Or take the tort of emotional distress that many states have. Yes. That can affect speech. Yes. Would you say that that is a regulation of speech, that tort? It is a regulation of speech that is constitutionally permissible as one of the exceptions to the prohibition of overbreath. Sometimes it is, sometimes it isn't. But we have to start with, is it a regulation of conduct for purposes of substantial overbreath analysis? Yes. The classification of the grabment of the regulation, I think, matters for determining who's got the burden. Am I right on that or not? I believe you're right. So then you're saying this is a regulation of speech, not conduct. But just as a threshold matter, if it's a regulation of conduct to prove substantial overbreath, the burden is on you, not the government. Correct. Okay. Yes. Maybe I should not have stopped where I did. I'm reading you the statute because this is where I get stuck with, it says engage in a course of conduct that causes. It is a conduct they're talking about that causes. That is, correct your honor. However, the conduct must be through means of an interactive computer service or electronic communication service or any other facility of interstate or foreign commerce. That's just how you deliver it. That's not affecting the conduct part. Correct, but what is being delivered is communication. Not necessarily through the mail. If I deliver a vial with white powder in it, there's no speech. That's covered by this act. It may be covered by the act, but a substantial amount of other communications, which are clearly speech, a substantial amount are also covered by the act. They do that, but that's the point. If it's written in conduct, then if there's a substantial number of other applications that are not just speech related, but actually unconstitutional applications, then maybe it's facially overbroad. But the burden would be on you to demonstrate that. Correct. I agree. That doesn't seem to burden on the government to demonstrate it. So then what are the substantial number of applications that are not just speech related, but that are unconstitutional speech restrictions? Well, the substantial amount of instances where the law is overburdensome relate to areas of speech. And so whether it is, in this case, for example, it was all text messaging or... If the text messaging alone doesn't show that it's an unconstitutional application to speech, if the text messaging is in service of extortion, then it's integral to the criminal conduct that can be regulated under the statute. Correct. But you have to show... You have to identify applications of the statute that regulate protected speech that are unconstitutional and prohibited. Absolutely. You have to show that those are a substantial number relative to the plain and legitimate sweep of the statute. Absolutely. So what's the case for saying that, given what we've all been saying? Well, we cite to the amount of examples of purely public or political speech in our brief that is reached by the 2013 statute that is clearly not reached by the 2006 statute. And the reason for the difference is that in the 2006 statute, you have to show that the defendant intended to cause a specific harm and that that actual harm was actually caused by the communications. Whereas under the current statute, any amount of speech that is published that could either attempt to cause substantial emotional distress or would be reasonably expected to cause substantial emotional distress falls within that category. But it also has to be intended to... There also is an intent required. True, but it's not just... If it was just an intent to kill or injure, which are two of the prongs, I think there would not be a constitutional issue here. But with an intent to intimidate or harass, those two prongs could be criminal, depending upon how a statute is written. But there's many circumstances where intent to intimidate or intent to harass may not be criminal. For instance, we cite the Tobin decision in this case that dealt with an intent to harass statute. There's many, many instances where harassment is not criminal. And in this situation where you have a statute where someone with an intent to harass is publishing messages on Twitter or what have you in an attempt to influence people or intimidate people in order to change their views or to do something, it falls within the scope of this statute, and that's why we believe it's substantially overbroad. Does that depend on what reasonably expected means? The reasonably expected, I think, has been interpreted by the courts that have reviewed this statute, and no other appellate court has, and by the district court in this case, basically to be a reasonable person standard. Whether a reasonable person in the same or similar circumstances would be intimidated or would feel harassed by this level of speech. And so the examples we cited in our brief, with many from then-candidate and now President Trump and his political opponents that we cite in our brief as well, all fall within the focus or the orbit of this statute. There's no political exception or saving to this statute. There's no savings cost to this statute. And by its plain face, that type of speech falls within the scope of this statute. The tort, the common law tort at issue in Hustler versus follow-up. Yes. In your view, would that be facially unconstitutional also? No. And why not? Because for two reasons. One is, first of all, in those cases, there's been a long tradition, well, a tradition going back to at least New York Times versus Sullivan, where the courts can step in. They step in by saying it's unconstitutional. Correct. I'm asking, that's an as-applied conclusion. Your claim is that if there are not as-applied applications that are unconstitutional, the statute is facially unconstitutional for being overblown. Yes. So in Hustler, they concluded that it was an unconstitutional application. Because there was, they didn't need to address the facial overbreath. But if somebody brought a challenge to the tort who was not subject to it, could not bring an as-applied challenge, could they bring a facial challenge to the tort under your theory? I don't think so. Why not? Because I think the state tort law is subject to a different analysis than a federal criminal statute. Why? Well, one, because of the chilling effect of the speech, that the difference between that someone could go to jail for their So if this statute was simply made a tort statute, it would be fine? A statute, no, I disagree, because this statute Is the state common law, if we rule for you, are we saying that the state common law toward an issue in Hustler is unconstitutional in the state? No, because of the specific intent requirement of the intentional infliction of emotional distress issue, if I'm thinking of the right case there. As well as, in that case, you have to prove actual harm in the state tort case. So it would bring it within the orbit of the 2006 statute that was reviewed by this court in Sayre, as opposed to this statute at issue here. Thank you. We don't have a lot of time. We still have two minutes. I'll say it. This is what I said, we have two more minutes. Good morning, Seth Aper for the United States. Good morning. So Judge Schor, I think you start the analysis at the right place, which is to ask, is this a statute targeted at speech or targeted at conduct? And I think the right answer is, it is targeted at conduct. That doesn't mean that there can't be applications of it to speech. But the question to begin with is, what was the targeted audience of this statute? And it criminalizes a course of conduct. And in my brief, I have a footnote, and I think one of them was the White-Potter example, and there were several other examples where you can violate this statute not using any words at all. I don't quite know how to make this judgment whether we treat it as a speech restriction or a conduct restriction. In McCulloch, the abortion protest case, they treated that as a speech restriction. All it actually regulated was being present in a physical space, which sounds like conduct. We then applied the same analysis in Cutting. That was just a prohibition on being in a place. It did not, in space, refer to expressive conduct at all. It's not an expressive expression at all, but we treated both of those as speech restrictions. So why does it make sense to treat this as a conduct restriction? I'm not as familiar with the circuit case, but in Coakley, they treated it as a time, place, and manner restriction because it had an impact on the reason people come to that location. So his argument here is, given the wide number of applications that this has to what are going to be communicative activity, in fact, part of the prong is two-way interactive communication systems. Why should we treat this as focused on conduct when it's true that it could regulate conduct, but it also is capturing lots of speech, just like in Coakley? Because the intention of it is to target courses of conduct that are done with this mens rea of injuring, killing, harassing, and intimidating. And you can do that in many different ways, but there's nothing special about this statute that says what we're targeting is only those ways of doing that that are communicative. If it happens to be communicative, we have to deal with that, and we have to ask the question, are there so many of those that are not only speech, but speech that is protected by the First Amendment, that then we have a concern in relation to the statute's appropriate sweep? So what we're asking is, are there, one, conduct that is not speech that we can regulate? That's part of it. Two, are there applications that are, I'll use the word communication, but not protected communication? That's in one bucket. And in the other bucket, we ask, well, how many applications of this statute are there to protected speech that can't be criminalized? And we have to ask, what is the ratio? And it has to be, the presumption is, especially where the statute does target conduct under Virginia v. Hicks, it's a very high burden to meet. That's how we do the analysis, I think. And what's important about Sayre is what Judge Lynch said there, which is the mens rea aspect of this statute limits its application to that kind of either conduct or the kind of communication that is very unlikely to be protected First Amendment speech. Mr. Christie puts forward a lot of examples, but those are hypothetical examples. There's one case in the United States where a district court has found that this statute was applied in an unconstitutional manner. We don't know if that's because people are chilled, or is that because prosecutors aren't bringing it? I guess that matters, but the point of Judge Lynch's opinion, as I read it, was if you go back to the brief in Sayre, while President Trump wasn't mentioned, there were lots of uses of communication that were unkind that appeared in that brief. And in a footnote in that opinion, Judge Lynch says, for the court, says those are not the kinds of uses of speech that are targeted by this statute. They may be annoying. They may be insulting. They may be unkind. But they are not injure, kill, harass, intimidate. And the opinion says we have to read those words in light of injure and kill. From the government's perspective, what is the significance of the difference between the 2006 statute and the 2013? I think in a fundamental way, it made the statute harder. It took out causing substantial emotional distress as a mens rea, which this court approved, but I think is a difficult question, and replaced it with intimidate. Intimidate is a mens rea that is throughout the United States Code. There are many statutes that use intimidate as a mens rea. Did changing it from causing harm to reasonably expected to cause harm also make it harder? No, I don't think so. So what is the practical significance in terms of how much easier it made it for the government? I think it's easier in the sense of you do not anymore have to produce the victim to win the case. So under the old statute, you had to put the victim on the stand to prove, I think, that this person was actually harmed. Now, you don't have to do that. You can prove that the conduct was reasonably likely to cause the harm, but you still have to prove that this defendant did this act with intention to injure, kill, harass, or intimidate. That was the focal point of Sager. But how does it work in practice, though, if we just isolate and harass? You have to prove that they intended to harass someone in a way that was reasonably expected to cause them... To cause a person substantial emotional distress. Now, if I just think about the Hussler example, Hussler v. Falwell, or Snyder v. Phelps, and you see the concern, right? That language seems to track those types of cases. But what happened in Snyder v. Phelps, that would be a perfect as-applied kind of challenge, right? If I can think of a field rule that I can correct, can I think of thousands of applications like that? It just seems limitless. That's why I don't quite understand how to do this under the statute. You can clearly contemplate circumstances in which it seemed like the harassed part of the statute could be applied in a way that would be unconstitutional. And once I can think of one, I can think of returning back to Sager, where we were focusing on the mens rea of substantial emotional distress. And there was, again, a list in the brief of multiple kinds of unpleasant uses of language. And the answer was, you can't look at substantial emotional distress in isolation and say, what does that word mean? What the opinion says is you have to read that word in conjunction with the other words, which at the time were kill, injure, or harass. And what the opinion says is, those words taken together talk about real, serious criminal intent. What does harass mean in the governance view? What does harass mean in the governance view? Act, conduct done with an intent to interfere with someone's functioning, basically. That's what it means to harass, like in the sexual harassment context, the inability to perform your job, the inability to engage in daily activities. Basically the same thing that Snyder found was an unconstitutional application. No, the reason he found it was an unconstitutional application is because it was about matters of public concern. That's the whole end of Snyder. Could something of public concern constitute harassment in the governance view? If the Westboro Baptist Church persons did what they did, and they did it through facilities of interstate commerce or online through the mail, some way of directly targeting a person who just lost their child and bombarded them with a bunch of the same hateful messages, would the government say that's cowardly? The complexity of that case, of course, is what were they trying to do? The real question was, was there an attempt to harass the family, or was there an attempt just to make a point? And I thought the importance of Snyder v. Phelps was, they were trying to make a point. It wasn't harassment of the individual. There was no statute that made harassment of the individual. We had a common law tort that made it illegal to engage in outrageous conduct. So if they just did a video, I'm just trying to understand what the government's view of the statute is. If they did a video and posted it and identified, there's a few that are going on today, here's our video of this, you would say that couldn't be covered by the statute? I would say that is not likely to be covered by the statute because it doesn't have the targeting aspect. I don't think it's covered by the statute because it doesn't have the targeting aspect that I think this statute requires. And that's what Snyder, I think, what Snyder v. Phelps was about. You engaged in discussion of matters of public concern that were done in a certain way to draw attention. It happened to harm the family. What about Hustler v. Falwell? Well, so if someone produces that same advertisement as was at issue in Falwell and sends it, I guess, to Falwell, is that covered by the statute or not? If they send it to Falwell? Yeah. If they send it to Falwell, then it's different than publishing it in a periodical, which is about a person of public concern. I mean, I'd have to think, too, that if you are actually bombarding Falwell with directed communications that are meant to intimidate or harass him, it could. If it's just published in a magazine, it could not be? I think less so because it's not targeted at the same. I'd say no because it's not targeted at the person. I think that's the grovelment of this statute. Suppose they do both. Sorry? Suppose they do both. Suppose they do both. Well, I would still think that the part that's potentially within the mens rea aspect of this statute is ascending to the person, not the general sort of publication. So if you sent a part of the figure, a really offensive cartoon of them, that's prosecutable under the statute? Well, one act certainly wouldn't be. But I guess if there were, I guess if they'd be prosecutable under the statute if I sent two nasty cartoons to a public figure. Possibly. I think possibly. I mean, yes, I think it depends on all the facts and circumstances of why you're doing that. I can't say that just because you're famous insulates all prosecution. But I do think it insulates under Falwell from this sort of general publication that's not specifically targeted. Because that's not done to harass. That's not done to harass. That's to make a point about a public figure. But if you're sending it directly to the person, what bigger point are you making? You're not doing anything other than trying to harass. It depends on the content of the mail. It depends on a lot of different things. But I can't say, I don't think, that if you directly go after a person that just because they're known. What if I sent it to their Twitter account? Well, I'll have to say that such that it's public to everyone or such that that's a directed communication. If I send you pictures, I guess that is both. That's a very hard case. I would say it's more like Falwell. That it's a publication. That it's more of a general. So it could not be prosecuted. I think that's a harder one. I think probably not. But maybe so. Well. That's the issue in the case. If it covers those type of things, then maybe you've got the potential. I would say no as to things that are published more broadly because those are not. I mean, Twitter, it's a hard one, right? Because it straddles this line, which I guess is what Judge Thompson's question really was. That's a hard one. But I think that where it would also have. It's a pretty prominent one. Well, but I think that that would be. I think where the First Amendment's in play and it's on both sides of the line, that could be an unconstitutional application if the government prosecuted it. But again, remember what we're doing. We're not asking, are there ways that we could use this statute in an unconstitutional way? There are ways that you could, I guess, try to prosecute cases in ways that you shouldn't. And we have a whole way of litigating that. And that was Hustler. And that was Falwell. And that's the usual way we do constitutional adjudication in this country. There is this rule of overbreadth. But it applies only when the number of unconstitutional applications so outweighs the constitutional application. And that's what was dealt with in Sayre. I mean, it remains an interesting question. But it was one dealt with in Sayre, where the court said that this statute is targeted at that kind of criminal conduct that is captured by the mens rea. And this statute in 2013 only made that mens rea stronger, not weaker. But was it Sayre to point out that the harm, proof of harm, was part of the calculation as to why it was not overbreadth? My friend says that. I guess I didn't really see that in the opinion. But if you see that, I accept that. But I don't think, I don't understand. If it does say that, I don't fully understand it. But I don't think it said that. So just question it out. Why, for overbreadth purposes, does it not matter whether you have to bring the victim in? Because the First Amendment aspect is either, was it conduct, since the First Amendment doesn't apply, or did you do it for a reason that doesn't give it First Amendment protection, even if it's communication? Whether you were successful, I've never understood that as to be part of the First Amendment calculus. And that's what I understand. It used to be we had to prove success, and now we don't. But I don't understand how the success element of what you did affects why you did it, which is what determines whether it's protected by the First Amendment. Thank you. Thank you. You have two minutes. Thank you. To pick up where Mr. A. Frank just left off, the success element was important to every court of appeals that upheld the 2006 statute because it cabled in the potential impact of chilling speech, that if someone intends to harass someone, intends to cause substantial emotional distress, and succeeds in doing so, the courts of appeals, including this one that looked at the 2006 statute, said it is hard to envision the types of examples that with someone making public statements or public speech online or on Twitter. Could you just say that? That's part of my little trouble understanding. So from the perspective of someone who's an ex-ante about to speak, if I know I'm saying something that's reasonably expected to cause emotional distress, whether in fact it does or not, why would that affect whether my calculations make the speech? Because it goes to your intent and the targeting issue. I have the same intent. But you would not have the same intent. If you're sitting there trying to harass... I'm trying, but whether I succeed in it, I don't know whether I'll be successful. I hope, but I don't know. It goes to the targeting issue that, in the exchange you were having with Mr. A. Freeman about Snyder. The intent statute here is an intent to engage in the course of conduct. And then what is odd about this statute in some ways, and then if the course of conduct has this impact on people, then it may or may not be criminal. And so the statute's not written like the threat statute, that I'm threatening you with an attempt to... Sayer upheld it when... What I'm trying to say is, what is the difference in terms of the likelihood of chilling someone, whether there is a requirement to prove that the effort, the intentional effort to cause distress to someone was successful? Because under Sayer, you had to have the serious criminal intent to kill, injure, intimidate, or cause substantial emotional distress and actually succeed in doing so. Under the current version, you can have the intent to harass or intimidate and have no intent to cause substantial emotional distress to someone. And if the government later on believes that, well, reasonably this would cause substantial emotional distress to somebody, that subjects you to criminal liability. That's the difference between the two statutes. Thank you. Thank you.